First case. 14-14-22, Gail A. Herhold v. Green Tree Servicing, LLC, oral argument not to exceed 15 minutes per side. Ms. Murphy for the plaintiff appellant. Good morning, your honors. I am Kathy Murphy. I represent Gail Herhold, the plaintiff appellant in this matter. I would like to reserve three minutes for rebuttal. Thank you, you may. I will not waste the court's time reciting the tortured procedural history of this case. I would merely like to emphasize that it would appear that defendants and Fannie Mae's legal strategy was merely to wear Ms. Herhold out rather than to reach the heart of the matter, which is that Ms. Herhold was thrown into foreclosure after having merely made a couple of late mortgage payments and being less than one full payment behind in her mortgage. I'm here on appeal of the grant by the District Court of the Eastern District of Michigan of Appellee's motion to dismiss and that court's denial of my client's motion for leave to amend her complaint. The district court denied our motion for leave to amend on the basis of futility. When a district court's denial of a motion to amend a complaint is based on a legal conclusion of futility, the decision is reviewed de novo. A court is to freely give leave to amend a pleading when justice so requires. Here the amended complaint contained facts sufficient to state a claim to relief that is plausible on its face, and it was error for the district court to deny Ms. Herhold's motion to amend her complaint. To survive a motion made under 12b-6, a plaintiff must include facts sufficient to state a claim to relief that is plausible on its face. Counsel, let's sort of jump to the to the real gravamen here. You started out by saying that she had only missed a few payments and only was somewhat behind, but does that vitiate the foreclosure or what's the basis here for actually vitiating the foreclosure? The basis here, your honor, is that Greentree misapplied payments that Ms. Herhold made and wrongfully rejected payments that Ms. Herhold made, thus catalyzing a default and throwing her into mathematics. Isn't what you just said originally correct, that she was in fact delinquent to some degree enough to trigger the right to foreclose under the mortgage? Well, your honor, in order to complete a default, the plaintiff, or I'm sorry, the homeowner must not make a reinstatement payment. If Ms. Herhold was given an inaccurate reinstatement payment, then her right to reinstate was frustrated and she would have been unable to reinstate, and so that further exacerbated the default that was catalyzed by Greentree's... Well, but help me here then, because if the amount asked for, you're saying, was too much, but nevertheless she didn't pay enough to in fact bring it current, if it'd been the other way around, that is, if they say pay a thousand and you paid a thousand and you really owed two thousand, and then they claimed you were in default, I would understand it, but as I understand it here, you're saying they asked for too much, but the amount that she did pay wasn't enough to bring it current. Isn't that right? Let me go back with the facts a little bit. I thought that when I read the briefs, that was pretty clearly stated by both sides, that she was still, you know, how much she was still behind, but she was still behind. Help me if that's wrong. If it's the fault of the servicer, if the servicer catalyzes a default, then the default should, the default is invalid. What do you mean catalyzes, in the sense that she did miss some payments, and she didn't pay enough to bring it current, even under your math? I mean, that's the way I read the briefs. Well, actually, your honor, Ms. Herhold made a double payment in February of 2012, which I didn't allege in this brief because I was not certain whether it may have been accounted for in the mortgage modification, but that is, if it were not accounted for in the mortgage modification, then she would have been current. She would have missed the July payment. Well, but that, as you say, hasn't been alleged in the papers, right? Well, if your honor would allow us to amend the complaint to make that allegation, we would happily do that. Okay, let's jump to one other thing. Under Michigan law, once the foreclosure has been done, you have a period of You could have redeemed by paying the correct amount. Now, granted, you would now have some fees on top of that, but was there any effort to exercise the right of redemption? No, your honor, beyond the attempt to reinstate and being provided with an inaccurate reinstatement amount, no. All of that is before the foreclosure. Correct. But in Michigan, as you know, your honor, the Michigan Supreme Court has long held that homeowners may hold over after foreclosure by advertisement and test the validity of a sale and summary proceedings. They can challenge foreclosure even post-redemption when there has been a showing of fraud, irregularity, accident, or mistake. And we obviously are alleging a serious irregularity in the foreclosure process here. Irregularity, as I understand it, needs to be in the foreclosure process, not in some statements of amounts owed and that sort of thing. Are there any cases that hold that a misstatement of the amount owed is an irregularity? Well, your honor, MCL 600.3204A1 requires that in order for, provides that a party may foreclose a mortgage by advertisement if all of the following circumstances exist. The very first one is a default in a condition of the mortgage has occurred by which the power to sell became operative. It's our contention that the default claimed in this case is invalid. Therefore, the very first requirement that a lender has to meet in order to institute foreclosure proceedings. When you say the default is invalid, is that a direct assertion that there was no default? It's an assertion that the default was catalyzed by Greentree. Was the problem with that the fact that they didn't serve process correctly or is just the fact that your client was not in arrears? Well, we made an allegation of lack of notice, but also Greentree misapplied payments and wrongfully rejected payments, thereby catalyzing a default. But you didn't, your client didn't pay up everything, right? You admit that. We were, as of, if Greentree had properly applied the payments that were submitted, Ms. Herhold would have been $700 behind, less than one payment behind, approximately 15 days before they sent a notice of foreclosure. Your Honor, I had a case where a homeowner had failed to make payments for four years on their home, and we resolved that case and were able to obtain a loan modification and keep the homeowner in her home. I have never seen a case where somebody was less than, you know, one full payment behind. This is very unusual. You may have a hard-hearted banker there in this case. Yes, Your Honor, we do. We've got a soft-hearted banker in the other case. Well, it was Fannie Mae in both cases, Your Honor, was the ultimate decision maker. But because they do it in another case doesn't mean that that's what the contract says, right? I understand, Your Honor. But there was also a breach of the mortgage contract in that the provision of an inaccurate reinstatement amount frustrates the right to reinstate. Wouldn't you agree? Well, that's not what I agree to. It's whatever the contract calls for and what the bank is doing. Did your client attempt to resolve it with the bank? Yes, she did, Your Honor, and she was provided with an inaccurate reinstatement amount. Well, but that went back sort of to my earlier question, is there law, any cases or statutes or holding or anything that says that a furnishing of an inaccurate reinstatement amount is an irregularity under that statute? It says that the irregularity, as I understood it, is in the foreclosure process. There was a case, an Eastern District of Michigan case, Galliard versus I believe it was Bank of America, where force-placed insurance was forced upon the homeowners in that case, and the insurance premiums were excessively high, and they made it so that the plaintiff homeowners were unable to qualify for a mortgage modification because the escrow amount was so high. And in that case, Judge Duggan, who is not necessarily a friend to homeowners in cases like this, found that that was a sufficient irregularity. Do you have a citation for that, or has that been appealed? I do, Your Honor. I can give you a copy of the case. But that does sound as though, in effect, if the force placement was improper, then they would be asking for money that wasn't really due. I mean, I haven't seen the case, but just the way you've stated it, in effect, that sounds like the same thing as simply asking you for too much money and then foreclosing because you didn't provide it, which potentially would be quite different. Okay. But if you have a citation, I'll be happy to look at it. Okay. May I approach the bench? You can just state it to us. Name, number, date, whatever. It is Galliard v. USAA Federal Savings Bank and USAA Casualty Insurance Company. That's cited in your brief, right? I believe it is, Your Honor. If it's cited in the brief, that's fine. That's okay. We can look it up. Thank you. Okay. And, Your Honor, if Your Honors would like to make the holding in this case that provision of an inaccurate reinstatement amount is sufficient grounds for finding an invalid default, I would appreciate it. Did you ask in the district court to have some kind of a mediation? I think that the bank ordinarily doesn't want foreclosures. They'd lose money on foreclosures. And if you, in fact, think that your client made the proper payments, it would have been easy to resolve this case. Well, without revealing too much about settlement negotiations, they were had, Your Honor. And GreenTree, as you may know, GreenTree, Bank of America had to dump a substantial portion of its portfolio because its investors had sued it for its lack of alacrity in foreclosing on homeowners. So it sold a very large portion of its portfolio to, I'm sorry, my time is up. Go ahead. Finish your sentence. It sold a very large portion of its portfolio to GreenTree Services, which is a specialist in foreclosure, Your Honor. And they were living up to their reputation in settlement negotiations with my client. Okay. Thank you, Counsel. Go ahead. Thank you, Your Honors. Rebuttal. Good morning, Your Honors. May it please the Court. Jonathan Engman, appearing here on behalf of the appellee, GreenTree Servicing, LLC. Your Honors, as you're aware and as the appellant has stated, we are here before you on an appeal of a denial of a leave to amend a complaint and then a subsequent or simultaneous, it was ruled at the same time, a motion to dismiss on 12B6. In looking at the attempt to amend, really what's important to point out is that the appellant, plaintiff, Ms. Herhold, in her breach of contract really brings only the amendment that there were misapplications of payments made, as she has stated before Your Honors today. At no time, and in fact there's admissions even in the amended complaint, that Ms. Herhold was at no time during this period current or not in default under the terms of the note and mortgage. There's some confusion or there's some smoke as to what the default was. There's a lot of numbers put in the briefs. There are questions about, well, there were multiple payoffs issued back-to-back that had varying numbers. I indicate, Your Honor, that all of that is occurring because the default, the payments, and the plaintiff appellant does not dispute this, were made very sporadically. And to the last case, this has nothing to do with forced place insurance. These were principal interest payments with escrows attached to them for taxes. Well, the question about the case she cites, and we've raised this, is what's the meaning of irregularity for the Michigan law that you can attempt to attack a foreclosure even after the redemption period if for, quote, irregularity. Do you want to address that as part of your argument? Your Honor, I would like to address irregularity. Even the proposed amended complaint that was not allowed to be filed did not show any irregularities as to the actual foreclosure process. The longstanding Michigan Supreme Court case, Reed v. Rylander, says that a borrower may hold over to test the foreclosure process in and of itself, wholly outside of, in other words, not allowing any issues as to what happened on the payments of the notes or anything else. That case is the premier case by the Michigan Supreme Court that has been held for almost 100 years. As the cases go through and they address things like irregularities, the process that she alleges as to being irregular, and I will address, for instance, and there was not much comment on it, the violation of the actual Michigan statute, there was no allegation in the proposed amended complaint that there was a violation of 3205A, which is the process by which the foreclosing entity must provide notice both by first-class mail and registered mail. And, in fact, in every brief through the state courts and in this case also, Green Tree has provided evidence, both in affidavits and demonstrative, of first-class mailing and of the registered mailings throughout the whole process. She said she didn't get it, but you showed on the record that it had been served. Yes, Your Honor, and I want to make one statement to that point. The Michigan statute, which this statute now is no longer in effect, but in effect back in 2012, 3205, that section of the statute did not require that the borrower actually receive it. It says that this process must be followed by the foreclosing entity prior to a sale being allowed. I understand that your allegation of evidence is that on the registered mail you have the post office documents of efforts to deliver. Yes, Your Honor. And on the first-class mail you have your statement or affidavit that you placed it in the mail. I mean, that's all you can have for first-class mail. Yes, Your Honor. There is an affidavit of compliance required by the statute that's recorded with the sheriff's deed in the register of deeds. Just as an aside, is there any reason, I mean, registered mail, you know, return receipt requested is such a high class of mail. Was there any reason you think that you have first-class also? It struck me a lot of times, you know, something says it's required to go by registered mail, but I wondered why it was registered and regular first-class as well. Frankly, Your Honor, I feel that the legislature felt that a first-class attempt, just sticking it in the post office, would actually potentially give better notice because a lot of people see a green card that they keep trying to push, and they're just like, no, I don't want to touch it. Fair statement. Okay, counsel, let me just go back to one point. I mean, I don't want to thrash through all of the numbers, but do you have any great dispute with the fact that if you had accepted all of her checks, she would have only been $710.37 short as she admits that she was? Your Honor, I'm not sure of that exact figure, and those numbers have been put forth in statements made in all the briefing. I will admit, and there was an affidavit provided in the state court proceedings from a Green Tree representative, that at the least defaulted time, she was pushing approximately two months behind. One of the biggest problems, Your Honor, that is difficult for the borrowers to understand is that when they don't make a full payment, even if it's several dollars off, which was an allegation that was made in this case, those payments cannot be applied to principal and interest. They are put into a suspense account, and they are held in a suspense account until enough money is brought in through partial payments that a full payment is made. And there were some disputes as to, well, the September payment then went back and paid the July payment, and this is what happens in default situations. You're continually going backwards to pay forward on your account. But I would say, Your Honor, that in addition, as we briefed and as was in the affidavit, at the very end of this time in November and December, now we have taxes coming to be paid, and reinstatement gets more difficult. In addition, contractually, the borrower is also now obligated to pay attorney fees or the foreclosure process fees. Now those are adding up, and it adds up quickly, Your Honors, and I understand that. But at no time, and there was no contractual obligation to Greentree to ever accept a partial payment. And even if you read her figures in their entirety, they were partial payments admitted even in— I see her math. Just the way things work, when you say you took her money and, quote, kept it in a suspense account, is there a process that at some point you give her that money back and then she can use it to make payments? That money, as it was stated in the affidavit, it was the July payment that was— the August payment, excuse me, that was held in suspense. Or maybe the July, Your Honors. I'm going off. But in any event, that money would be held until a full payment was made, until enough money was made on the other side to make a full payment, which was done, and Ms. Harehold admits in all of her briefing, that was the July payment, which was the last full payment made. By the time we're in November, and Your Honors, let me state also, in the proposed amended complaint, in the fact pattern, the amended complaint that was not accepted, even in their fact pattern, they show that the payments are very sporadic. There's a July—excuse me, there's a June, then there's an August, then there's a late September, then there's a temp in November. I mean, the payments are inconsistent. And throughout this time also, as was pursuant to the affidavit, Your Honor, and I want to make this—I want to address this because of a comment that the appellant made in the very beginning. Multiple attempts to rectify this were made by Greentree Servicing, which is laid out in the affidavit from the servicer. They made multiple phone calls throughout August, September, and October, and November. The last thing the Greentree Servicing wants is a foreclosed property. That was my point. Ordinarily, it doesn't do you any good. And, in fact, though this has no bearing on the case, the reality is what they get at the bitter end is pennies on what they could have collected had a borrower fulfilled the obligation under the terms of a note. When they tried to contact her, did they actually talk to her, or did she just ignore the phone calls, or what happened there? In the affidavit, as stated, which is a part of the exhibits in front of Your Honors, the calls went unanswered. Do you have a citation to that affidavit? We can find it if you don't, but just it would help us if you had a citation handy. If not, go ahead. Your Honors, I could probably dig it out. Go ahead. We'll find it. I do know it was attached, actually, Your Honors, to the appellant's answer to Greentree's motion to dismiss at the lower court. I see. You said she attached it to her answer? Yes. Okay. So, Your Honors, I lay this out very carefully to show that the lower court, the district court judge did not err in looking at the futility question of not allowing the amendment to go forward. 3205A was still shown as being not violated by Greentree. That's the Michigan process, so there's no irregularity there enough to give rise. In addition, the appellant, through this entire process, has admitted consistently to a default of some kind, of some kind. I appreciate that as to whether the payments were applied properly or not properly, there was some questions. But to the default, they have always admitted that. And, Your Honors, in that case, based on 12B-6, the judge did not make a misruling on just saying, I'm not going to allow the amendment and go forward and rule on the motion to dismiss as it was presented. I will state also, Your Honors, and this was brought up in the lower court as well, the Michigan statute had a statutory remedy that Ms. Harehold could have exercised in this case. And Ms. Harehold, despite the fact that she states she never received any of the statutory mailings, she admits that she learned of the foreclosure prior to the foreclosure happening by posting on the home. At that time, she could have immediately sought the assistance of an attorney who would have invoked the statutory remedy, which would have been bring a circuit court action in the state of Michigan to have the foreclosure sale pulled into a state court, to have it litigated in that way so that these questions could have been litigated, which is what the Michigan legislature set up. That was the statutory scheme for this. That was never done. That was not done, Your Honor, and she waits until the lender has already quick claimed its interest. Redemption has expired. The lender has quick claimed its interest to a GSE, to Fannie Mae, and then she attacks and brings all of these allegations. It's unfair to say that Green Tree is using this as some way to pull Ms. Harehold through the mud or whatever the statement was. It's a very unfair statement. They sat on their hands, and the statutory scheme was not followed. Just to be clear, what issues would have been litigated in state court had she followed this process of getting the matter into state court? She followed the process of getting the matter into state court. The issue that could have been litigated would have been the modification issue, which is set forth statutorily, and that would have been the issue she says, well, I've made these payments, or they have misapplied these payments. All of these questions that we are painfully discussing now would have been handled in a state court prior to the sale, and then simultaneously the statute would have allowed the lender, Green Tree in this case, to then bring a counter-complaint for judicial foreclosure, and all of this would have been handled under the supervision of a judge. All of that, that's what's described as the movement from foreclosure by notice to judicial foreclosure. Yes, Your Honor. The outcome of this would have been no different, based upon your position in all this, and that the contract was complied with and there wasn't a culpable cause of action that the plaintiff could have seceded with. So really, had she done that, the outcome would have been, in the final analysis, been the same, or at least that would be your argument. Your Honor, I agree with that statement. The outcome would have been the same. I also think your time has expired. Murphy, you have three minutes for rebuttal. So, Your Honors, we would have loved to have stayed in the state court, but it was Green Tree that bifurcated Ms. Herhold's third-party complaint, removed it to Genesee County Circuit Court, and then removed it again to the Eastern District of Michigan. We would have loved to have stayed in the district court in Grand Blanc, Michigan, in Genesee County. I think he's referring to moving from foreclosure by notice to judicial foreclosure, not what happened long after the foreclosure. And, Your Honor, Section 3205A is no longer in effect in Michigan because the banks were successful in lobbying the legislature to repeal it. And, as you know, you have to take the facts as alleged by Ms. Herhold as true. She states that she did not receive the notice by certified mail or by first-class mail. She doesn't have to receive it, though, does she, under the statute? She has to be notified, Your Honor, yes. They have to send it to her. But she has to receive it. But she knew before the sheriff's sale about the fact that this was going on, right? She knew a few days before the – sometime in January, sometime shortly before the sheriff's sale, she saw a notice posted on her door, yes. I'm sorry. Is there a case that says that if they comply with the mailing requirements and the registered mail requirements, that it must be received? I didn't read the statute that way. Do you have a case that says that? Well, Your Honor, I mean, if notice isn't received, I mean, you know, notice and opportunity to be heard are, right? I mean, if the person goes to Hawaii and never checks their mail, it's not the fault of the bank, is it? I mean, that's why I don't think the statute reads that way. That's why I'm just asking you if somebody says it does. I understand what you're saying, Your Honor. I can't cite a case for you on that issue. I'm sorry. And with respect to our allegations or this being a part of the foreclosure process, 3204, MCL 600.3204, sets out the prerequisites for instituting foreclosure by advertisement. And our allegation is that the very first requirement was not met, there being a valid default. And with respect to the affidavit of the Greentree employee, Greentree's counsel had submitted it in a lower court proceeding in the state court, and that's how I received it. Okay. Thank you. We can look at it. And so then I used it in this court. And, Your Honor, with respect to Ms. Herhold, you know, waiting to unleash a vicious attack on Greentree and Fannie Mae until the very last possible moment, she's an ordinary person, Your Honor. She's a medical biller. She's not a lawyer. She didn't know what to do until it was very, very late in the process. Thank you, Your Honors. Thank you, counsel. Case will be submitted, and the clerk may call the next case.